UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KIM CAZES | * | CIVIL ACTION |
| | * | NO. 09-5456 |
| | * | |
| versus | * | SECTION B |
| | * | JUDGE LEMELLE |
| | * | |
| | * | DIVISION 3 |
| EUSTIS INSURANCE, INC. | * | MAGISTRATE KNOWLES |

* * * * * * * * * * * * * * * * * *

## JOINT PRETRIAL ORDER

Pretrial conference before the Honorable Ivan L. R. Lemelle, United States District

Judge, on **August 26, 2010.**

> APPEARANCES FOR PLAINTIFF:     DALE E. WILLIAMS, ESQ.
> Counsel for Plaintiff Kim Cazes
>
> APPEARANCES FOR DEFENDANT:     EDWARD F. HAROLD, ESQ.
> Counsel for Defendant Eustis Insurance, Inc.

## DESCRIPTION OF THE PARTIES

The PLAINTIFF in this action is Kim Cazes, 35465 Madison Street, Slidell, Louisiana

70460.

The DEFENDANT in this action is Eusis Insurance, Inc., 1340 Poydras Street, Suite

1900, New Orleans, Louisiana 70112.

## JURISDICTION

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This action

properly lies in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b).

## LIST AND DESCRIPTION OF PENDING MOTIONS

Currently pending before the Court are the following motions:

    a.      Defendant's Motion for Summary Judgment

    b.      Plaintiff's Motion in Limine.

## SUMMARY OF MATERIAL FACTS CLAIMED BY PLAINTIFF

Kim M. Cazes (Cazes) worked for Eustis from August 14, 2006 until April 30, 2009 as a customer service representative earning $49,750 per year.  Only three months after her hire Cazes was given a performance review in November 2006 to assess her work for the first 90 days of employment.  This first review, conducted by Ms. Mary Albano, marked Cazes as "meeting expectations" in seven categories and "needing improvement" in five.  Cazes, confident in her ability to learn the new system, requested to have her performance reviewed in another 90 days, which review was completed in January 2007.  This second review, again conducted by Ms. Albano, marked Cazes as "meeting expectations" in ten categories and "needing improvement" in only two.  Cazes underwent a hysterectomy at the end of June 2007 but had not requested any FMLA leave nor had she completed any FMLA leave paperwork. Cazes was not aware that Eustis had marked her for FMLA leave during this time.

In April 2008, Cazes was given another employee's entire workload after that employee quit.  Cazes repeatedly went to her supervisor, Ms. Albano, requesting assistance with her double workload during the month of May 2008.  On Friday, May 30, 2008, Cazes went to Ms. Laura Kowalski, the second line supervisor, about the situation, and Ms. Kowalski replied that she would address Cazes's concerns with Ms. Albano the following Monday (June 2, 2008). Without further discussion, on June 5, 2008, Cazes was placed on a 90-day probation by her supervisor, Mary Albano, for "personal calls and using too many PTO days," which Cazes denied.  As to the allegation that Cazes got renewal quotes at the last minute, the production of renewal quotes came directly from the broker or company.  Cazes had no control over when the

2

renewal quotes would be received but generally requested the quotes 60 days prior to the renewal date.  Cazes completed the probationary period with praise from Ms. Joan Andry.

In late January 2009, approximately four months after Cazes successfully completed the probationary period, Joan Andry, her new supervisor, conducted a performance review.  In this review, Cazes was rated in thirteen areas:  eight were rated "meets expectations," four were "exceeds expectations," and one was "consistently exceed expectations."  There was never any discussion regarding attendance issues, taking time off, or being out of the office.  Furthermore, none of the issues presented in Cheri Charvet's handwritten, undated notes were addressed, though it appears that the issues arose well before the performance review was conducted. Shortly thereafter, in March, Cazes received a salary increase.

As of January 1, 2009, Cazes had twenty days of PTO time and had used only four and a half days by April 30, 2009 when she was terminated.  Furthermore, in 2008, Cazes did not use leave in excess of her PTO.  Cazes also gave advance notice of all leave that wasn't due to unexpected illness or emergencies.

Cazes had previously been diagnosed with degenerative scoliosis.  During the course of her treatment, Cazes's orthopedic specialist revealed, for the first time in late January 2009, that Cazes had spondylolythesis, a chronic spinal condition for which Cazes was to begin treatment. Ultimately, Cazes would require major surgery for her conditions.

Cazes denies chronically arriving to work late or leaving work early unless such attendance related to her medical situation.  Ms. Andry knew by the beginning of February 2009 that Cazes had spondylolythesis that would eventually lead to surgery.  By early March, Eustis requested that Cazes submit the proper FMLA paperwork.  The paperwork identified Cazes's problems as having the potential for back surgery, which would require a long recovery time.

The FMLA paperwork also identified episodic flare-ups of debilitating pain that would prevent Cazes from performing her job.

Cazes performed her work to the best of her ability at all times. But, after she informed Ms. Andry of the anticipated surgery and after she completed the FMLA paperwork, Cazes was constantly subjected to heightened performance and attendance standards, despite the fact that Cazes's so-called attendance problems from mid-2008 through her termination related directly to her medical condition. For example, Ms. Andry held Cazes to the standard of personally notifying supervisory personnel of an emergency situation before taking leave to the point that Cazes would have to notify the owner of the company if Ms. Andry was not available, despite the fact that there was "no written authority" for such a requirement.

Cazes's short-term absences and Flex Fridays were covered by her backup, Paulette Bernard, who would cover producers or customers' immediate demands while Cazes was out. But, for extended absences, such as the rehabilitation period after Cazes's anticipated back surgery, the responsibility to cover Cazes's workload fell to Ms. Andry, who generally worked 40-45 hours per week in her capacity as supervisor and carried the personal responsibility of caring for her disabled husband and disabled grandchild, both of whom lived with Ms. Andry.

In early March 2009, Cazes gave her supervisor more than a week's notice for two doctor's appointments. Furthermore, Cazes anticipated emergency situations given her medical condition and often limited her lunch hour both to accommodate any such situations and keep her work up to date. On April 6, 2009, Joan Andry reprimanded Cazes for failing to perform a task as assigned by Ms. Charvet. Ms. Charvet requested a premium for a proposal, which Cazes provided. Of the two files Joan Andry reviewed for performance errors on April 27, 2009, the alleged errors found were 1) missing instructions from the producer (Cheri Charvet) and 2) the

binder was not sent to the insured.  Cazes did not have any instructions from the producer and was not able to send the binder to the insured prior to receiving one from the broker.  Eustis alleges that Cazes issued a certificate with the wrong information.  But, Cazes actually corrected the certificate prior to it being sent to the insured and certificate holders.  None of the potential consequences cited by Eustis would ever have been an issue.

On April 22, 2009, Cazes left early due to an emergency with her grandchild but was unable to inform Ms. Andry because she was not in the office.  Instead, Cazes informed her producer and the receptionist.

On April 30, 2009, Cazes, experiencing extreme pain, shut down her work station and left work at 3:20 p.m.  Prior to leaving, Cazes noticed that Ms. Andry's office door was closed, which meant that Ms. Andry was in a meeting.  Cazes then informed her backup, Paulette Bernard, and the receptionist that she had to leave; Cazes also asked Ms. Bernard to inform Joan Andry when she got out of her meeting.  Later that afternoon, Joan Andry, Laura Kowalski, and Liz Blancher called Cazes and terminated her.  The decision to terminate Cazes was based entirely on Ms. Andry's discussions with Laura Kowalski, Eustis's Human Resources representative.  Never did Eustis even notify Cazes that she was being considered for termination for any reason.

## SUMMARY OF MATERIAL FACTS CLAIMED BY DEFENDANTS

Eustis Insurance, Inc. is a full-service insurance agency providing both commercial and personal insurance. As part of its operations, Eustis employs producers who obtain and maintain business. These producers are supported by customer service representatives who assist in managing client accounts.

In August 2006, Eustis hired Plaintiff as a commercial lines customer service representative. In this position, Plaintiff's duties included processing account materials, maintaining client account paperwork such as expiration lists and daily activity sheets, speaking with clients regarding their needs, preparing correspondence to clients regarding changes in and renewals of insurance policies, meeting with her assigned producers on topics such as policy renewals. Over the course of her employment, Plaintiff was assigned to work with producers Clay Beery, Bob Swayze, and Cheri Charvet.

In June 2008, Plaintiff's then supervisor Mary Albano, placed her on probation for performance issues. In July 2008, Joan Andry became Plaintiff's supervisor. Ms. Andry reduced Plaintiff's workload by removing her from responsibility for working with Mr. Swayze. Ms. Andry removed Plaintiff from probation in September of 2008.

In January of 2009, Ms. Andry gave Plaintiff a performance review rating her a 3 on a 5 point scale. At this time, neither Mr. Beery nor Ms. Charvet had made any complaints about Plaintiff's performance. Sometime thereafter, Ms. Charvet began complaining to Ms. Andry about Plaintiff's performance. Ms. Andry then reviewed Plaintiff's work with her and discussed with her the errors she found. Following this discussion, Plaintiff's performance did not improve and she made numerous mistakes and had numerous poor interactions with Ms. Charvet and firm clients.

Plaintiff also had attendance problems during this period of time. She arrived late or left work early 18 times between being removed from probation and her termination. She failed to schedule days off in a timely fashion. She left work early without following her supervisor's instruction to notify her in the event she needed to leave.

Based on her history, particularly the fact she had been on probation six months earlier, along with the continued pattern of performance issues and attendance problems Eustis terminated Plaintiff's employment on April 30, 2009. This decision had nothing to do with Plaintiff's back condition or the possibility that at some indeterminate point in the future, she would need to take FMLA leave to have back surgery.

## UNCONTESTED MATERIAL FACTS

1.      Eustis Insurance, Inc. is a full-service insurance agency providing both commercial and personal insurance.

2.      Eustis employs producers who obtain and maintain business.

3.      In August 2006, Eustis hired Plaintiff as a commercial lines customer service representative.

4.      Plaintiff's duties included processing account materials, maintaining client account paperwork such as expiration lists and daily activity sheets, speaking with clients regarding their needs, preparing correspondence to clients regarding changes in and renewals of insurance policies, meeting with her assigned producers on topics such as policy renewals.

5.      Over the course of her employment, Plaintiff was assigned to work with producers Don Beery, Bob Swayze, and Cheri Charvet.

6.      Mary Albano was Plaintiff's supervisor from the outset of her employment through July of 2008.

7.      In August 2007, Plaintiff went on leave following a surgery for a hysterectomy.

8.      Plaintiff was on leave between four-and-six weeks prior to returning.

9.      At this time, Plaintiff was not eligible for FMLA as she had not been with the company the requisite one year.

10.     On June 5, 2008, Ms. Albano placed Plaintiff on probation for performance issues.

11.     Due to Ms. Albano's retirement, in July 2008, Joan Andry became Plaintiff's supervisor.

12.     At this time, Plaintiff was working with three producers, Bob Swayze, Don Beery, and Cheri Charvet.

13.     In August of 2008, Ms. Andry removed Plaintiff from supporting Mr. Swayze.

14.     In September 2008, Ms. Andry removed Plaintiff from probation.

15.     In January 2009, in preparation for Plaintiff's annual review, Ms. Andry audited two files and seeing no major errors, gave Plaintiff a 3 out of 5 on her performance review.

16.     At this time, neither Mr. Beery nor Ms. Charvet had notified Ms. Andry of any problems with Plaintiff's performance.

17.     Eustis has created a work schedule of nine days of work in each two week period so that employees have every other Friday or Monday off.

18.     Eustis also provides its employees with paid time off that may be used for any reason the employee chooses.

19.     Upon termination, Eustis paid Plaintiff for 14 days of unused paid time off in the amount of $2,460.18.

20.     In October 2009, Plaintiff underwent surgery on her back.

21.     As a result of undergoing this surgery, Plaintiff was unable to work from the date of the surgery through February 2010.

22.     Plaintiff became employed by Insurance Underwriters Limited on April 19, 2010.

23.     Plaintiff's rate of pay with Insurance Underwriters is $40,000 annually.

## CONTESTED MATERIAL FACTS

1.      Whether Cazes underwent a hysterectomy at the end of June 2007 but had not requested any FMLA leave nor had she completed any FMLA leave paperwork.

2.      Whether Cazes was not aware that Eustis had marked her for FMLA leave during this time.

3.      Whether Eustis employs customer service representatives who assist producers in managing client accounts.

4.      Whether the memorandum placing Plaintiff on probation notes the following areas of concern: excessive personal phone use, absenteeism and last minute scheduling of Personal Time Off, failing to closely watch policy expiration dates, and sending renewal notices at the last minute.

5.      Whether Eustis held her job for her without question and returned her to her prior position.

6.      Whether removing Mr. Swayze from one of Plaintiff's producers reduced Plaintiff's workload.

7.      Whether the memorandum taking Plaintiff off of probation states, "Should your performance deteriorate over the next 12 months, this could be considered a recurring problem and your employment may be terminated without further warning."

8.      Whether this review concerned only Plaintiff's technical performance and did not evaluate Plaintiff's attendance.

9.      Whether after the review had been given, Cheri Charvet notified Ms. Andry that she was unhappy with Plaintiff's performance.

10.     Whether Ms. Andry then engaged in a more thorough audit of Plaintiff's work.

11.     Whether that audit revealed numerous errors.

12.     Whether on March 5, 2009, Ms. Andry discussed these errors with Plaintiff who posited she was doing what she had been instructed by her prior supervisor.

13.     Whether Ms. Andry then instructed her in the way she expected the work to be performed and told Plaintiff that in the future, she would be held accountable for these types of errors.

14.     Whether Plaintiff complained that Ms. Charvet would not allow her to send any work out without it being reviewed and approved by Ms. Charvet.

15.     Whether Ms. Andry instructed Ms. Charvet that the CSR, Plaintiff, was responsible for the work going out the door and that she should not be requiring personal review of Plaintiff's work.

16.     Whether on April 3, 2009, Plaintiff mistakenly tried to return a premium to an insured.

17.     Whether Ms. Andry counseled her on this mistake.

18.     Whether on April 20, 2009, Plaintiff was asked to fax a certificate of insurance to an insured's, Global Safety, client Boyd Gaming.

19.     Whether on the cover page, she addressed Boyd by noting she had previously faxed the certificate "several times."

20.     Whether Global Safety and Security expressed serious dissatisfaction with Plaintiff's conduct.

21.     Whether following this incident, Ms. Andry met with her supervisor, Liz Blancher, and Laura Kowalski, Director of Human Resources to discuss Plaintiff's employment.

10

22.     Whether Eustis expects its employees to display regular and reliable attendance. although it realizes that employees sometimes have needs or obligations that can only be met during the work day.

23.     Whether the stated purpose of providing this day off is, "The intent of the Fridays Off Program is to enable staff members to attend to personal appointments, such as medical appointments, on their day off, thereby minimizing interruptions to business operations."

24.     Whether the policy states "PTO must be scheduled and approved by your supervisor or manager in advance, except in the case of illness or emergency. Use of PTO time that is not scheduled in advance is considered an "unscheduled" absence and will count against a staff member's attendance record. Repeated unscheduled absences may result in disciplinary action in accordance with the Office Attendance Policy described in Section 300 of this manual. PTO taken in excess of the amount a staff member has in their PTO Bank during the calendar year will be without pay and, unless protected under FMLA or state law, may count against the staff member for disciplinary purposes."

25.     Whether Eustis allows employees to "make up" time that they miss when tardy or leaving early.

26.     Whether Eustis's policy on this issues provides, "Staff members who are chronically late, even though they make-up the time, may be subject to disciplinary action."

27.     Whether in July of 2008, Plaintiff left work early due to a stomach illness.

28.     Whether she notified Ms. Andry of her need to leave through email.

29.     Whether upon Plaintiff's return to work, Ms. Andry advised her that she was to personally tell Ms. Andry face to face if she needed to leave prior to the end of the work day.

30.     Whether in early October 2008, five days after being removed from probation, Plaintiff informed Ms. Andry that she had arrived late for work citing bad traffic as the reason.

31.     Whether when told she would be required to use PTO for this time, Plaintiff responded by stating that she had only taken half hour lunches previously and that made up for the time.

32.     Whether on February 23, 2009, a Monday, she related that she would miss Thursday due to a procedure for her husband.

33.     Whether she also indicated she would take Friday off as it was her flex day.

34.     Whether Plaintiff's absence created a conflict because her backup was already scheduled to be off on that date.

35.     Whether Certificates of Insurance are governed by Louisiana laws and regulations.

36.     Whether on March 2, 2009, Plaintiff she indicated should leave early the following Monday for doctors' appointments, would miss Thursday, March 12, 2009 and take her flex day on March 13, 2009.

37.     Whether despite the policy that time off had to be made up during the week of an absence, she announced she already done so for these appointments.

38.     Whether during their March 5, 2009 meeting, Ms. Andry expressed concern to Plaintiff about her attendance.

39.     Whether Ms. Andry advised her that she needed to notify Ms. Andry when she was making up time.

40.     Whether Ms. Andry was not in the office on April 22, 2009.

41.     Whether on March 9, 2009, Plaintiff turned in a request for FMLA leave.

42.     Whether Plaintiff's FMLA request noted that she had lumbar pain in her back.

43.     Whether it also noted the likelihood of potential surgery, but stated that she would undergo "conservation" treatment at the time rather than surgery.

44.     Whether Amy Clay, a commercial customer service representative supervised by Ms. Andry took a maternity leave of approximately two months.

45.     Whether Ms. Clay remains employed by Eustis.

46.     Whether Plaintiff's final salary with Eustis was $49,750 annually.

47.     Whether Plaintiff's last day of work with Eustis was April 30, 2009.

48.     Whether Plaintiff spent excessive amounts of time during the work day on the telephone with personal calls.

49.     Whether on April 22, Plaintiff left work early without informing her backup, Paulette Bernard or Liz Blancher, Ms. Andry's supervisor.

50.     Whether on April 30, 2009, Plaintiff left work early without informing Ms. Andry.

51.     Whether on March 23, 2009, Plaintiff unilaterally informed Ms. Andry that she had left work for two hours on Friday, March 20, 2009, to go to an eye doctor.

52.     Whether she stated that she had come in early during the week and skipped lunch following the appointment to make up the time off.

53.     Whether she also stated that she would be out the next morning for a follow-up appointment, but was making up time on her own accord.

54.     Whether between September 2008 and April 30, 2009, Plaintiff arrived at work late or left work early on eighteen occasions.

55.     Whether between September 2008 and April 30, 2009, Plaintiff was absent from work with little or no notice on more than one occasion.

56.     Whether on April 6, 2009, Plaintiff failed to do a task in the way Ms. Charvet wanted it done and sent a rude email regarding the task to Ms. Charvet.

57.     Whether Ms. Andry counseled Plaintiff for sending confrontational and unprofessional e-mail correspondence to her producers, reminded her that such behavior was not conducive to a smooth running operation and was unacceptable.

58.     Whether Ms. Andry warned Plaintiff about her poor performance and warned her again that failure to improve could lead to disciplinary action.

59.     Whether on April 14, 2009, the accounting department notified Ms. Andry that it had requested Plaintiff's assistance in correcting a billing mistake Plaintiff had made, but had not gotten a timely response.

60.     Whether the notice stated that the only scheduled treatments were for three days in March and April.

61.     Whether at no point during Plaintiff's employment did anyone say anything negative about her back condition or her request for leave under the FMLA.

62.     Whether on April 27, 2009, Plaintiff issued a certificate of insurance on behalf of Eustis's client, Inmar Marine Services.

63.     Whether the certificate identified the wrong insurers and contained the wrong policy numbers.

64.     Whether Ms. Andry concluded that Plaintiff had simply copied a prior year's certificate without checking to ascertain if any of the information had changed.

65.     Whether issuing an inaccurate certificate, as Plaintiff did, can result in civil sanctions.

66.     Whether had anyone charged that the inaccurate information on the Certificate was fraudulently endorsed, Eustis could have been subjected to criminal charges.

67.     Whether Plaintiff displayed a poor attitude in her communications with the producers to whom she was assigned.

68.     Whether Plaintiff's back condition substantially limited her in performing any major life activity.

69.     Whether Eustis ever regarded Plaintiff as being substantially limited in any major life activity.

70.     Whether Plaintiff's sporadic attendance record prevented her from performing the essential functions of her job.

71.     Whether in April 2008, Cazes was given another employee's entire workload after that employee quit.

72.     Whether Cazes continuously went to her supervisor, Ms. Albano, requesting assistance with the double workload during the month of May 2008.

73.     Whether on Friday, May 30, 2008, Cazes went to Ms. Laura Kowalski about the situation, and Ms. Kowalski replied that she would address Cazes's concerns with Ms. Albano the following Monday (June 2, 2008).

74.     Whether without further discussion, on June 5, 2008, Cazes was placed on a 90-day probation by her supervisor, Mary Albano, for personal calls and using too many PTO days, which Cazes denied.

75.    Whether the production of renewal quotes came directly from the broker or company.

76.    Whether Cazes had no control over when the renewal quotes would be received but generally requested the quotes 60 days prior to the renewal date.

77.    Whether Cazes completed the probationary period without incident and with praise from Ms. Joan Andry.

78.    Whether in 2008, Cazes was diagnosed with degenerative scoliosis.

79.    Whether during the course of her treatment, Cazes's orthopedic specialist discovered that she also had spondylolythesis, a chronic medical condition for which Cazes began treatment.

80.    Whether Cazes would require major surgery for her conditions.

81.    Whether in late January 2009, approximately four months after Cazes successfully completed the probationary period, Joan Andry, her new supervisor, conducted a performance review.

82.    Whether in this review, Cazes was rated in thirteen areas:  eight were rated "meets expectations," four were "exceeds expectations," and one was "consistently exceed expectations."

83.    Whether there was never any discussion regarding attendance issues, taking time off, or being out of the office.

84.    Whether none of the issues presented in Cheri Charvet's handwritten, undated notes were addressed, though it appears that the issues arose well before the performance review was conducted.

85.     Whether Cazes gave advance notice of all leave that wasn't due to unexpected illness or emergencies.

86.     Whether Cazes chronically arrived to work late or left work early unless such attendance related to her medical situation.

87.     Whether Ms. Andry knew by the beginning of February 2009 that Cazes had serious back problems that would eventually lead to surgery.

88.     Whether by early March, Eustis requested that Cazes submit the proper FMLA paperwork.

89.     Whether Cazes performed her work to the best of her ability at all times.

90.     Whether after she informed Ms. Andry of the anticipated surgery and after she completed the FMLA paperwork, Cazes was constantly subjected to heightened performance and attendance standards, despite the fact that Cazes's so-called attendance problems from mid-2008 through her termination related directly to her medical condition.

91.     Whether Ms. Andry held Cazes to the standard of notifying supervisory personnel of an emergency situation before taking leave to the point that Cazes would have to notify the owner of the company if Ms. Andry was not available, despite the fact that there was "no written authority" for such a requirement.

92.     Whether Ms. Andry constantly monitored Cazes's attendance and subjected her performance to heightened scrutiny after Cazes turned in her FMLA paperwork.

93.     Whether the paperwork identified Cazes's problems as having the potential for back surgery, which would require a long recovery time.

94.     Whether the FMLA paperwork also identified episodic flare-ups of debilitating pain that would prevent Cazes from performing her job.

95.     Whether Cazes's short-term absences and Flex Fridays were covered by her backup, Paulette Bernard, who would cover producers or customers' immediate demands while Cazes was out.

96.     Whether, for extended absences, such as the rehabilitation period after Cazes's anticipated back surgery, the responsibility to cover Cazes's workload fell to Ms. Andry, who generally worked 40-45 hours per week in her capacity as supervisor and carried the personal responsibility of caring for her disabled husband and disabled grandchild, both of whom lived with Ms. Andry.

97.     Whether in early March 2009, Cazes gave her supervisor more than a week's notice for two doctor's appointments.

98.     Whether Cazes anticipated emergency situations given her medical condition and often limited her lunch hour both to accommodate any such situations and keep her work up to date.

99.     Whether on April 6, 2009, Joan Andry reprimanded Cazes for failing to perform a task as assigned by Ms. Charvet.

100.    Whether Ms. Charvet requested a premium for a proposal, which Cazes provided.

101.    Whether of the two files Joan Andry reviewed for performance errors on April 27, 2009, the alleged errors found were 1) missing instructions from the producer (Cheri Charvet) and 2) the binder was not sent to the insured.

102.    Whether Cazes did not have any instructions from the producer and was not able to send the binder to the insured prior to receiving one from the broker.

103.    Whether Cazes actually corrected the certificate prior to it being sent to the insured and certificate holders.

18

104.    Whether any of the potential consequences cited by Eustis would ever have been an issue absent Cazes' ADA and FMLA claim situations.

105.    Whether on April 22, 2009, Cazes left early due to an emergency with her grandchild but was unable to inform Ms. Andry because she was not in the office.

106.    Whether Cazes informed her producer and the receptionist.

107.    Whether on April 30, 2009, Cazes, experiencing extreme pain, shut down her work station and left work at 3:20 p.m.

108.    Whether prior to leaving, Cazes noticed that Ms. Andry's office door was closed, which meant that Ms. Andry was in a meeting.

109.    Whether Cazes then informed her backup, Paulette Bernard, and the receptionist that she had to leave; Cazes also asked Ms. Bernard to inform Joan Andry when she got out of her meeting.

110.    Whether later that afternoon, Joan Andry, Laura Kowalski, and Liz Blancher called Cazes and terminated her.

111.    Whether the decision to terminate Cazes was based entirely on Ms. Andry's discussions with Laura Kowalski, Eustis's Human Resources representative.

112.    Whether Eustis ever notified Cazes that she was being considered for termination for any reason.

113.    Whether Plaintiff's back condition motivated Defendant's decision to terminate Plaintiff.

114.    Whether Plaintiff's FMLA request motivated Defendant's decision to terminate Plaintiff.

115.   Whether Defendant terminated Plaintiff to interfere with her rights under the FMLA.

116.   Whether Ms. Andry subjected Plaintiff's work to heightened scrutiny because of her request for FMLA leave.

117.   Whether Ms. Andry subjected Plaintiff's attendance to heightened scrutiny because of her back condition.

118.   If any violation of the FMLA is found on the part of Defendant, whether such violation is willful.

119.   Whether Plaintiff suffered any damages as a result of Defendant's actions.

120.   Whether Plaintiff is entitled is entitled to any damages, and if so, in what amounts.

121.   Whether Plaintiff mitigated damages consistent with her duty to do so.

122.   Whether the termination of Plaintiff's benefits in conjunction with the termination of her employment caused her any recoverable damages.

## CONTESTED ISSUES OF LAW

1.    Whether terminating Plaintiff because she needed unscheduled and unpredictable, but cumulatively substantial, absences or a right to take unscheduled leave at a moment's notice would violate the FMLA.

2.    Whether Plaintiff has an actual disability as defined by the Louisiana Employment Discrimination Law.

3.    Whether Defendant regarded Plaintiff as disabled under the Louisiana Employment Discrimination Law.

4.     Whether Plaintiff is a Qualified Individual With a Disability as that term is defined by Louisiana's Employment Discrimination Law.

5.     Whether terminating Plaintiff because she needed unscheduled and unpredictable, but cumulatively substantial, absences or a right to take unscheduled leave at a moment's notice would violate the Louisiana Employment Discrimination Law.

6.     Whether Plaintiff is entitled to compensatory damages.

7.     Whether Plaintiff is entitled to liquidated damages.

8.     Whether Plaintiff is entitled to present the issue of liquidated damages to the jury.

9.     Whether Plaintiff is entitled to front pay.

10.    Whether Plaintiff is entitled to back pay and benefits.

11.    Whether Plaintiff is entitled to any type of interest.

12.    Whether Plaintiff is entitled to attorneys' fees and costs.

13.    Whether Defendant is entitled to attorneys' fees and costs.

## DESIGNATION OF EXHIBITS

The PLAINTIFF designates the following exhibits:

a.     FMLA Paperwork dated Mar 9, 2009 (Eustis 167-73)

b.     Salary rate change authorization dated Mar 9, 2009 (Eustis 256)

c.     Salary rate change authorization dated Feb 28, 2008 (Eustis 257)

d.     Email from Kowalski to Calcagno dated Aug 14, 2007 (Eustis 268)

e.     Email from Cazes to Calcagno dated Aug 15, 2007 (Eustis 267)

f.     Notice of Claim Determination (Eustis 281-82)

g.     Eustis Insurance Response to Notice from Unemployment (Eustis 283)

h.     Notice of Unemployment Claim Filed (Eustis 286)

i.      Typewritten Notes by Liz Blancher (Eustis 292-93)

j.      Typewritten Notes by Laura Kowalski (Eustis 294-95)

k.      Email from Andry to Kowalski dated May 1, 2009 (Eustis 296)

l.      Eustis Year in Review 2008 (Eustis 300)

m.      Email from Benard to Andry dated Apr 30, 2009 (Eustis 303)

n.      Email from Cazes to Andry, etc. dated Apr 30, 2009 (Eustis 304)

o.      Email from Cazes to Andry dated Apr 23, 2009 (Eustis 305)

p.      Email from Cazes to Andry dated Mar 24, 2009 (Eustis 306)

q.      Email from Cazes to Andry dated Mar 23, 2009 (Eustis 307)

r.      Email from Cazes to Andry dated Feb 23, 2009 (Eustis 308)

s.      Email from Cazes to Andry dated Jan 23, 2009 (Eustis 309)

t.      Email from Cazes to Andry dated Nov 13, 2008 (Eustis 310)

u.      Email from Cazes to Andry dated Nov 13, 2008 (Eustis 311)

v.      Email from Cazes to Andry dated Oct 31, 2008 (Eustis 312)

w.      Email from Cazes to Andry dated Sep 29, 2008 (Eustis 313)

x.      Email from Cazes to Andry dated Aug 25, 2008 (Eustis 314)

y.      Email from Cazes to Andry dated Aug 22, 2008 (Eustis 315)

z.      Inter-Office Memorandum dated Apr 23, 2009 (Eustis 334)

aa.     Email from Cazes to Andry dated Apr 23, 2009 (Eustis 335)

bb.     Letter from Andry to Cazes dated Apr 8, 2009 (Eustis 350)

cc.     Inter-Office Memorandum dated Apr 3, 2009 (Eustis 355)

dd.     Technical Employee Performance Evaluation dated Jan 21, 2009 (Eustis 356-58)

ee.   Employee Self Assessment – Technical dated Jan 7, 2009 (Eustis 359-61)

ff.   Insurance Technical Career Path Example (Eustis 364)

gg.   Letter from Andry to Cazes dated Sep 24, 2008 (Eustis 366)

hh.   6 Month – Job Performance Review dated Jan 25, 2007 (Eustis 377-81)

ii.   Job Performance Review dated Nov 16, 2006 (Eustis 382-86)

jj.   Caliper Profile Evaluation dated Jun 23, 2006 (Eustis 402-05)

kk.   Humana Termination of Coverage (Eustis 422)

ll.   Handwritten Notes undated and unsigned (Eustis 592-93)

mm.   Eustis Policy Manual (Eustis 594-710)

nn.   Documents relating to Plaintiff's attempt to obtain employment post-termination

oo.   Plaintiff's payroll and tax records

pp.   Employee benefits earned with Eustis

qq.   Any exhibit listed by Defendants

The DEFENDANTS designate the following exhibits:

a.   8/14/2006 Kim Cazes executed Eustis Policy Manual Acknowledgement

b.   9/16/2006 90 day performance review by Mary Albano on Kim Cazes

c.   1/25/2007 6 Month Job Performance Review by Mary Albano on Kim Cazes

d.   3/1/2008 Salary Rate Change Authorization on Kim Cazes

e.   Documents pertaining to payroll deductions for Plaintiff being absent without pay

f.     4/3/2008 email to Laura Kowalski regarding complaint concerning email forwarded by Kim Cazes to co-workers

g.     6/5/2008 memorandum from Mary Albano to Kim Cazes regarding probation with Mary Albano notes of meeting

h.     7/22/2008 email from Joan Andry to Laura Kowalksi regarding meeting with Kim Cazes

i.     8/15/2008 email from Bob Swayze to Joan Andry regarding Dong Khanh Supermarket

j.     8/22/2008 email from Kim Cazes to Joan Andry regarding time used and made up

k.     8/25/2008 email from Joan Andry to Kim Cazes regarding extra time

l.     9/24/2008 Memorandum from Joan Andry to Kim Cazes regarding removal from probation

m.    9/29/2008 emails between Kim Cazes and Joan Andry regarding late arrival

n.     10/31/2008 email from Kim Cazes to Joan Andry regarding leaving early to go to bank

o.     11/13/2008 email from Kim Cazes to Joan Andry regarding leaving early not feeling too well

p.     11/13/2008 emails between Kim Cazes and Joan Andry regarding leaving early

q.     1/15/2009 Cheri Charvet handwritten note regarding Chez Nous account

r.     1/23/2009 email from Kim Cazes to Joan Andry regarding appointment with orthopedist

s.     1/27/2009 Technical Employee Performance Evaluation on Kim Cazes

t.     1/27/2009 Employee Self Evaluation by Kim Cazes

u.     2/3/2009 Insurance Department Bulletin No. 09-02 75-77

v.     2/17/2009 email string between Kim Cazes and Cheri Charvet regarding Mike's Maintenance Company with backup documentation

w.     2/23/2009 email from Kim Cazes to Joan Andry regarding absence due to husband's procedure

x.     3/1/2009 Salary Rate Authorization Memo on Kim Cazes

y.     3/6/2009 Memorandum from Joan Andry to file regarding Kim Cazes Audit of 3/5/2009 with the following attachments.

z.     Joan Andry notes Kim Cazes attendance

aa.    3/2/2009 email from Kim Cazes to Joan Andry with Joan Andry handwritten notes regarding out of office

bb.    1/12/2009 Fax Transmittal Page regarding Maritime Liability Renewal Coverage

cc.    3/2/2009 email string between Kim Cazes and Joan Andry regarding INMAR

dd.    1/15/08 Inmar Marine Application

ee.    Joan Andry ASIMO – 1 Notes regarding various issues to review with Kim Cazes

ff.    Joan Andry New Orleans Country Club Notes regarding various issues to review with Kim Cazes

gg.    10/8/2008 four letters from Kim Cazes to Robert Crisafi of New Orleans Country Club regarding excess wind and hail coverage, business auto coverage, commercial general liability insurance, and umbrella coverages.

hh.    Joan Andry notes on WOOD1 policy issues

ii.    2/25/2009 email from Paulette Bernard regarding out of office with Joan Andry handwritten notes

jj.    2/25/2009 email from Paulette Bernard to Joan Andry and Kim Cazes regarding seminar

kk.    2/20/2009 activity reports of Kim Cazes with Joan Andry handwritten notes

ll.    3/9/2009 Certification of Serious Medical Condition Kim Cazes

mm.    3/9/2009 Leave Request Form Kim Cazes

nn.    3/23/2009 email from Kim Cazes to Joan Andry regarding eye doctor appointments

oo.    4/7/2009 email from Cheri Charvet to Joan Andry regarding Chatta Box Inc.

pp.    4/3/2009 memo from Joan Andry to file regarding counseling Kim Cazes on CLAYM – 1 account handling

qq.    4/7/2009 Invoices LAD Hotel Partners, Sam and Gloria Newman

rr.    4/8/2009 letter from Joan Andry to Kim Cazes regarding inappropriate email

26

ss.     4/14/2009 email string among Joan Caruso, Joan Andry, and Kim Cazes regarding Edenborn Office condo

tt.     4/20/2009 email from Kim Cazes to mariana@globalsafety.net regarding Boyd Gaming with attachment

uu.     4/23/2009 email from Kim Cazes to Joan Andry regarding late arrival due to traffic

vv.     4/23/2009 Interoffice Memorandum from Joan Andry to file regarding meeting with Kim Cazes

ww.     4/23/2009 email from Kim Cazes to Joan Andry regarding leaving early due to grandson

xx.     4/27/09 Inmar Services L.L.C. Certificate of Liability Insurance

yy.     Joan Andry notes on Inmar Marine Certificate

zz.     4/27/2009 corrected Certificate of Liability Insurance Inmar Marine

aaa.    4/28/2009 email string between Kim Cazes and Joan Caruso regarding Joel Scott, LLC

bbb.    4/30/2009 email from Kim Cazes to Joan Andry and others Subject: Out of Office

ccc.    4/30/2009 email from Paulette Bernard to Joan Andry Subject: Kim left about 3:20 today.

ddd.    4/30/ 2009 termination memorandum to Kim Cazes

eee.    4/30/09 Laura Kowalski termination decision memorandum

fff.    5/1/09 email from Joan Andry to Laura Kowalski regarding termination call with Kim Cazes

ggg.   5/6/09 memorandum by Liz Blancher memorializing termination call with
       Kim Cazes

hhh.   Attendance Records on Kim Cazes

iii.   Eustis Client Service Representative II Job Description

jjj.   ICBT Course Catalogue with Kim Cazes Initials

kkk.   Joan Andry vacation planner pages

lll.   Eustis EEO Policy

mmm. Eustis ADA Policy

nnn.   Eustis Work Rule Policy

ooo.   Eustis Office Attendance Policy

ppp.   Eustis Office Hours Policy

qqq.   Eustis Attendance Records Policy

rrr.   Eustis Time Off Policies

sss.   Eustis Managing Performance Policies

ttt.   Eustis Blank FMLA forms

uuu.   Plaintiff's Medical Records

## DEPOSITION TESTIMONY TO BE OFFERED

None except for purposes of rebuttal or impeachment.

## LIST/DESCRIPTION OF CHARTS, GRAPHS, MODELS, ETC.

For the PLAINTIFF:  a chart outlining Plaintiff's lost; a timeline of events; portions of
exhibits listed above for review by the jury.

For the DEFENDANTS:  Defendant may reproduce exhibits in large size for the view of
the jury.

## LIST OF WITNESSES

Witnesses for the PLAINTIFF:

a.      Kim M. Cazes, Plaintiff
        Dale E. Williams
        212 Park Place
        Covington, LA 70433

        Will testify to all claims and allegations stated in Plaintiff's Complaint and
        the defenses set forth in Defendant's answer

b.      Mary Albano
        P.O. Box 1335
        Picayune, MS 39466
        601-798-7589

        May testify as to Plaintiff's claims and job performance

c.      Joan Andry
        Eustis Insurance, Inc.
        Fisher & Phillips L.L.P.
        201 St. Charles Ave., Suite 3710
        New Orleans, LA 70170

        May testify as to Plaintiff's claims, job performance, FMLA leave, and
        termination

d.      Elizabeth Blancher
        Eustis Insurance, Inc.
        Fisher & Phillips L.L.P.
        201 St. Charles Ave., Suite 3710
        New Orleans, LA 70170

        May testify as to Plaintiff's claims, job performance, FMLA leave, and
        termination

e.      Dominique Cazes, III
        35465 Madison Street
        Slidell, Louisiana 70460

        May testify as to Plaintiff's claims of general damages and Plaintiff's
        searches for employment after her termination from Eustis

f.      Cheri Charvet Eustis Insurance, Inc.
        Fisher & Phillips L.L.P.

29

201 St. Charles Ave., Suite 3710
New Orleans, LA 70170

May testify as to Plaintiff's claims, job performance, FMLA leave, earnings, and termination

g.   Kerri MacDonald Chauvin
Eustis Insurance, Inc.
Fisher & Phillips L.L.P.
201 St. Charles Ave., Suite 3710
New Orleans, LA 70170

May testify as to Plaintiff's claims, job performance, FMLA leave, earnings, and termination

h.   Laura Kowalski
Eustis Insurance, Inc.
Fisher & Phillips L.L.P.
201 St. Charles Ave., Suite 3710
New Orleans, LA 70170

May testify as to Plaintiff's claims, job performance, FMLA leave, earnings, and termination

i.   Ward Stallings
Eustis Insurance, Inc.
Fisher & Phillips L.L.P.
201 St. Charles Ave., Suite 3710
New Orleans, LA 70170

May testify as to Plaintiff's claims and FMLA leave

j.   Any and all witnesses whose testimony becomes necessary for cross-examination, impeachment, and/or rebuttal;

k.   Any other Witness listed, identified and/or called by any other party in this suit.

Witnesses for the DEFENDANTS:

a.   Laura Kowalski
Director of Human Resources
(may be contacted by counsel)

Ms. Kowalski is Defendant's Director of Human Resources. She will be able to testify to Defendant's human resources policies and procedures,

evaluation system, pay practices, etc. Ms. Kowalski will also be able to testify regarding Plaintiff's employment history, time on probation, FMLA request, attendance, performance issues, and the decision to terminate her employment.

b.      Joan Andry
        Commercial Lines Supervisor
        (may be contacted through counsel)

        Ms. Andry was Plaintiff's direct supervisor during part of Plaintiff's employment. She can testify regarding Plaintiff's job performance, attendance, non-compliance with policy, evaluation, and pay raise. She will explain how Plaintiff's failure to abide by company policies created problems for other employees. Ms. Andry can also testify regarding the decision to remove Plaintiff from probation as well as the decision to terminate Plaintiff's employment.

c.      Liz Blancher
        Commercial Lines Coordinator
        (may be contacted through counsel)

        Ms. Blancher was in the line of supervisory authority over Plaintiff. She can testify to her knowledge of Plaintiff's job performance, her probation, and the decision to terminate Plaintiff's employment.

d.      Cheri Charvet
        Producer
        (may be contacted through counsel)

        Ms. Charvet was a Producer whom Plaintiff supported in her role as CSR. Ms. Charvet can testify regarding Plaintiff's job performance including both mistakes that Plaintiff made and inappropriate conduct by Plaintiff.

e.      Mary Albano
        P.O. Box 1335
        Picayune, MS 39466
        601-798-7589

        Ms. Albano was Plaintiff's supervisor from the beginning of her employment with Defendant through approximately July of 2008. Ms. Albano can testify regarding Plaintiff's job performance during that period as well as the decision to place Plaintiff on probation.

f.      Dr. Padmini Nagaraj
        3351 Severn Avenue, Suite 301
        Metairie, LA 70002

Dr. Nagaraj may testify regarding Plaintiff's emotional injury claims and other potential sources of her alleged emotional distress.

The Witness Lists on behalf of the Plaintiff and the Defendants were filed in accordance with prior court orders.  No other witnesses will be allowed unless agreeable to all parties and their addition does not affect the trial date.  This restriction will not apply to rebuttal witnesses or documents whose necessity cannot be reasonably anticipated.

This case is a **JURY** case, and the jury trial is applicable to all aspects of this case.

Proposed jury instructions, special jury interrogatories, trial memoranda and any special questions that the Court is asked to put to prospective jurors on voir dire shall be delivered to the Court and opposing counsel not later than **five working days** prior to the trial date, unless specific leave to the contrary is granted by the Court.

The issue of liability **WILL NOT** be tried separately from that of the quantum.

Trial shall commence on **Monday, SEPTEMBER 13, 2010** at **8:30 a.m.**, and is expected to last between three (3) and four (4) days.

No previous trial dates have been assigned in this matter.

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of trial and may not be amended except by the consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

Possibility of settlement of this case was considered.

Respectfully submitted,
LAW OFFICE OF DALE EDWARD WILLIAMS

/s/Dale E. Williams
Dale E. Williams, Bar #18709
212 Park Place
Covington, Louisiana 70433
Telephone: (985) 898-6368
Facsimile:  (985) 892-2640
mailto:dale@daleslaw.com
*Counsel for Plaintiff Kim Cazes*

FISHER & PHILLIPS L.L.P.

/s/Edward F. Harold
EDWARD F. HAROLD
   La. Bar Roll No. 21672
LARRY SOROHAN
   La. Bar Roll No. 26120
201 St. Charles Avenue, Suite 3200
New Orleans, Louisiana 70130
Telephone:  (504) 522-3303
Facsimile:  (504) 522-3850
Email:  eharold@laborlawyers.com
*Counsel for Eustis Insurance, Inc.*

New Orleans, Louisiana, this 26th day of August 2010.

HONORABLE IVAN L. R. LEMELLE
UNITED STATES DISTRICT JUDGE